In re the MARRIAGE OF Thomas Eugene WINELAND and Cathy Ann Wineland.

Thomas Eugene WINELAND, Petitioner–Appellant,

v.

Cathy Ann WINELAND, Respondent–Respondent.

No. WD 31279.

Missouri Court of Appeals, Western District.

Dec. 2, 1980.

John T. Kay, Kibbe & Kay, California, for petitioner–appellant.

David Brydon, Hawkins, Brydon & Swearengen, P. C., Jefferson City, for respondent–respondent.

Before CLARK, P. J., and DIXON and SOMERVILLE, JJ.

DIXON, Judge.

This is an appeal in a dissolution proceeding. The appeal must be dismissed. The trial court failed to completely divide the marital property despite a motion filed listing jointly owned personal property not set off to either party, which it is claimed exceeds $5,000 in value.

Both parties concede that the decree is not final because of the failure to divide the assets. It is asserted by respondent, however, that portions of the decree, specifically, the child custody and support provisions, should be carved out of the judgment and reviewed. Because of that contention, it will be necessary to state some of the procedural and factual background.

The husband and wife were married on May 24, 1968. At the time of the marriage, the wife had a child born June 6, 1967, almost a year prior to the marriage. Another child was born January 1, 1969. The husband filed the petition for dissolution in August, 1978, when the wife left the family home and moved to Texas. The husband's petition claimed paternity of both of the children, and the wife denied the husband's paternity of the older child. Both parties pleaded and testified to an irretrievable breakdown of the marital relationship. The evidence disclosed that the marriage had been a stormy one, the husband being accused by the wife of brutality and the husband asserting the wife was "running around." Both the husband and wife asserted a claim to custody, and both presented evidence on that issue which need not be detailed. The wife continued to assert, as a defense to the husband's claim of custody, the husband's lack of paternal relation to the oldest child. The husband's testimony on that issue can only be accurately set forth verbatim. When asked if he was the natural father of the older child, he replied, "I'm not the natural father, but I am his father." " . . . I raised him from a baby." When again asked if he was the natural father, he answered, "No." It further appeared that when the child was ready for school, both the husband and wife executed an affidavit to obtain a birth certificate that would reflect the child as a legitimate child of the husband and wife. In the divorce trial, the parties both asserted the affidavits so made were untrue.

The parties testified to the property owned, apparently all of the property having been acquired after the marriage.[1] This testimony lacked much in the way of particularity, both as to itemization of property and values. There was evidence the parties owned a one–acre tract and house, several vehicles,[2] household goods, and a relatively small amount of cash.

After the taking of the evidence on April 27th, the procedure followed has created considerable confusion. At the close of the evidence, the court expressed concern over the status of the oldest child and requested that counsel furnish authority on the issue. The court was concerned that these memorandums be timely filed. Counsel filed their memorandums within the 30 days allowed. Three months later, on September 6, 1979, the court prepared a memorandum reciting the evidence and purporting to decide the issues. The memorandum refers to the problem of the illegitimacy of the older child, and the court determined that the child was "equitably adopted" by the father. The custody of the children was given to the mother, and the visitation rights of the father were spelled out in considerable detail. The memorandum further divided some of the personal property and found an equity of $10,000 in the home which the memorandum set off to the husband. The wife was given an award of $5,000 for her "½ of the equity." The trial court's memorandum was filed September 10, 1979.

On September 24th, the wife filed a motion asking for rehearing and modification. This motion listed by attachment the list of personal property which the decree did not divide. The minutes reflect that on September 25th the court addressed a letter to counsel "advising parties that marriage was dissolved by Memorandum" and "giving further instructions to attorneys." This was filed September 28, but is not included in the legal file in this court. On October 4, the wife filed a motion to compel compliance with the "judgment."

On October 5th, the husband filed a motion styled "Motion for Rehearing, Modifications and Clarification of Memorandum." This motion, as it is pertinent here, claimed the memorandum was not a judgment and

---

1. There was some mention of items, such as school records, jewelry, and other personal items, conceded to be separate property.

2. The trial court's memorandum declares that the "1974 LTD was purchased since separation" and is "declared to be sole and separate property of petitioner." Section 452.330.3 RSMo 1978, presumptively makes all property acquired after *marriage* and before a decree of legal separation marital property, however title is held.

did not finally dispose of the marital property. By these motions, the parties were agreed that the property had not been completely divided.

██ The court, on the same day, October 5, filed a "Judgment Nunc Pro Tunc" which purported to make a finding that the marriage was "irretrievably broken and is dissolved." The order purported to make the finding relate back to September 6. The pretended basis for the nunc pro tunc order was that the court had intended to make the finding and order of dissolution based on the testimony of the parties, but "inadvertently failed to do so."[3] The minute entry reflecting the "nunc pro tunc" order also recites, "Petitioner by leave of Court is given permission to appeal." The pending motions were directed to be heard on October 12th. The husband filed his notice of appeal October 9th. Despite the direction of the court that the motions would be heard on October 12th, the court entered an order on October 11th overruling the husband's and wife's motions, but directing the attorney for the wife to file a "formal written judgment" and directing that such judgment, when signed and filed, should be "considered final." On October 12th, a formal judgment was filed. This "judgment" recites the filing of the court's memorandum, overrules all pending motions, dissolves the marriage, gives the wife custody of the children, and spells out the husband's visitation. The husband was ordered to pay $100 per month per child for child support. Maintenance is not referred to in any way. The only reference in the "judgment" to the division of the marital property is as follows:

"The marital property is divided and distributed in accordance with the memorandum of the Court which is incorporated by reference herein."

Although not demonstrable with any certainty, the children were apparently transferred to the custody of the mother around October 12th. On October 26, the wife filed

a motion to compel compliance with decree reciting that the husband had come to Texas and forceably removed the children to Missouri. The husband, on October 26, filed a motion for rehearing, modification, and clarification, basically a reprise of his earlier motion with some additional allegations concerning other evidence bearing on the issue of custody. On November 16, the court sustained the wife's motion and overruled the husband's motion. The minute entry of the court on November 16 determined and ordered that the temporary custody of the children be with the mother pending appeal and denied supersedeas to stay transfer of custody. This is unquestionably a proper order under *State ex rel. Stone v. Ferriss*, 369 S.W.2d 244 (Mo. banc 1963). Section 452.380 RSMo 1978, cited by the husband as requiring affidavit or hearing before entry of a temporary order of custody, in its context applies to such orders entered prior to a trial on the merits. In the instant case, the evidence had been heard on the issue of custody, and the court, as in *State ex rel. Stone*, was simply providing for an interim order during the appeal.

██ Despite all of the procedural maze outlined above, the judgment is not final, the jurisdiction is not exhausted, and the appeal must be dismissed because the trial court has failed to divide the marital property. Section 452.330 RSMo 1978; *Fields v. Fields*, 584 S.W.2d 163 (Mo.App. 1979); *Corder v. Corder*, 546 S.W.2d 798 (Mo.App. 1977); *Anspach v. Anspach*, 557 S.W.2d 3 (Mo.App. 1977); *Glascock v. Glascock*, 607 S.W.2d 834 (Mo.App. 1980). The cases cited should be consulted on the remand of the case. The trial court may, on proper motion and notice, reopen any phase of the case. *Glascock, supra.*

The trial court apparently rested the issue of support on a theory of "equitable adoption." The validity of that determination is not here considered. There are other theories which may be applicable to these facts. Section 474.070 RSMo 1978, the le-

---

**3.** Such a correcting entry must be based upon some writing in the record which shows the actual judgment rendered and may not be employed to correct judicial errors, mistakes, or oversights. *Fields v. Fields*, 584 S.W.2d 163, 165 (Mo.App. 1979), and cases there cited.

gitimation statute construed in *Simpson v. Blackburn*, 414 S.W.2d 795 (Mo.App. 1967), is one such theory.[4] Likewise, the contract theory for support of a child set forth in *L. v. L.*, 497 S.W.2d 840 (Mo.App. 1973), may be applicable. If the issue of the legitimacy of the oldest child is reopened, the parties should consult *S___ v. S___*, 595 S.W.2d 357 (Mo.App. 1980), before proceeding further.

The only other question which must be addressed is the wife's contention that, despite the lack of a full and complete disposition of the marital property, the court should take up and decide the issue of child custody. Cited in support is language from *State ex rel. Horridge v. Pratt*, 563 S.W.2d 168 (Mo.App. 1978), and what the wife refers to as the implication of *Fields, supra.*

*State ex rel. Horridge* was a prohibition case involving a request for a change of judge. The case on an earlier appeal had been remanded for a new hearing on an issue of maintenance, the dissolution portion of the decree being unquestioned. The argument made was that the remand on the maintenance issue was only an extension of the prior proceedings, thus eliminating any right to a change of judge on remand. *Horridge* points out that the statute makes the dissolution portion of the decree separable and, if not appealed from, final between the parties despite the appeal of other issues. The wife emphasizes the language of *Horridge*, "an appeal will not lie from that portion of the decree which lacks finality," and argues that this language permits review of the child custody and support portions of the instant case despite the conceded lack of finality in the property portion of the dispute between the parties. No such implication from the language of *Horridge* was intended. All that the language and the holding in *Horridge* addressed was the finality of the dissolution portions of the decree.

In *Fields*, the dissolution and property issues were appealed. The dissolution was affirmed since it is by statute severable. Since custody questions were not raised by the parties, the opinion does recite that the judgment is affirmed as to the award of custody. That statement was unnecessary in *Fields* since custody was not an issue in the case. Aside from the language in *Fields* and *Horridge* implying some finality to parts of the decree other than dissolution, the cases have uniformly adhered to the view that the failure of the trial court to enter a decree properly dividing the property requires dismissal of the appeal because of a lack of finality in the judgment.

 The marriage was dissolved by the judgment entered October 12th; and since that issue is not appealed by either party, it is final. § 452.360(1) RSMo 1978. The balance of the decree cannot and should not be carved into separate portions, some of which are final and reviewable and others of which lack finality and cannot be reviewed. To do so would create a situation authorizing piecemeal appeals.

The failure of the trial court to exhaust its jurisdiction requires that the trial court be repossessed of the cause, aside from the dissolution of the marriage, and "upon proper notice, vacate, modify, or correct any part of the decree entered." *Pendleton v. Pendleton*, 532 S.W.2d 905 (Mo.App.1976). The issue of the scope of a reversal on an appeal from only one portion of a judgment in dissolution, final and appealable as to all issues, need not be reached or decided in this case.

Appeal dismissed.

All concur.

---

**4.** The husband executed an affidavit acknowledging paternity. It is for the trial court to weigh this admission against his subsequent denials of paternity.